UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-14168-CV-ROSENBERG
(16-14002-CR-ROSENBERG/LYNCH)
MAGISTRATE JUDGE REID

JULIUS ANDREW REASON,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## REPORT OF MAGISTRATE JUDGE

### I.  Introduction

This matter is before the Court on *pro se* Movant's Amended Motion to Vacate, filed pursuant to 28 U.S.C. § 2255, attacking the constitutionality of his conviction and sentence entered following a guilty plea in Case No. 16-14002-CR-ROSENBERG. [CV ECF No. 6].[1] Movant was convicted of conspiracy to import and conspiracy to manufacture, distribute, and possess with intent to manufacture and distribute a Schedule I controlled substance, namely, Dibutylone HCI, a positional isomer of pentylone. [CR ECF No. 258].

This cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Admin. Order 2019-2; and Rules 8 and 10 Governing Section 2255 Proceedings in the United States District Courts. [CV ECF No. 2].

The Court has reviewed Movant's Amended Motion [CV ECF No. 6], the Government's Response along with its exhibits. [CV ECF No. 13], and all pertinent portions of the underlying

---

[1] The citation "CV ECF No. ___" is used to reference documents in the instant civil case. The citation "CR ECF No. ___" is used to reference documents in the underlying criminal case.

1

criminal file. Movant's Reply is also considered. [CV ECF No. 24]. For the reasons discussed below, the Amended Motion should be DENIED.

## II.   Claims

Construing the Amended Motion liberally, as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Movant raises four claims:

1. Newly discovered evidence from the Indian River Crime Lab Report identifies the substance as "cocaine schedule II 56.64. Not crack cocaine." [ECF No. 6 at 5].

2. A new rule of constitutional law, *U.S. v. Phifer*, 909 F.3d 372 (11th Cir. 2018), determined that the regulation addressing the definition of positional isomer is ambiguous. [*Id*. at 6].

3. Movant is actually innocent because the definition of positional isomer is ambiguous in his Indictment. [*Id*. at 8].

4. Newly discovered evidence that the definition of positional isomer is ambiguous and proof that Movant does not meet the knowledge requirements for conviction. [*Id*. at 9].

Movant seeks a reversal of his conviction, a dismissal of the indictment, and immediate release. [*Id*. at 14].

## III.   Relevant Procedural History

### A. *Indictment, Plea Agreement, Factual Proffer, and Plea Hearing*

Movant (along with a co-defendant) was charged in a superseding indictment with (Count 1) conspiracy to import a controlled substance, Dibutylone HCI, in violation of 21 U.S.C. § 952(a); (Count 2) conspiracy to manufacture, distribute, and possess with intent to manufacture and distribute a controlled substance, Dibutylone HCI, in violation of 21 U.S.C. § 841(b)(1)(C) and 802(14) and C.F.R. § 1308.11(h)(16); (Count 3) possession with intent to distribute a controlled substance, Dibutylone HCI, in violation of 21 U.S.C. § 84(a)(1) and 18 U.S.C. § 2. [CV ECF No. 13-1]. Dibutylone is a positional isomer of pentylone, a Schedule I controlled substance. [*Id*.]. For

each count, Movant faced a maximum penalty of thirty years in prison, a $2,000,000 fine and $100 special assessment, and a maximum six-year term of supervised release. [*Id*. at 8].

The facts of the offense are detailed in the factual proffer supporting Movant's plea agreement. [CR ECF No. 130]. On or about January 13, 2016, special agents of Homeland Security Investigations learned of an international package shipped from China to a U.S. Post Office Box in Vero Beach, Florida. [*Id*. at 1]. During a border search, U.S. Customs and Border Protection officers found the package containing one kilogram of Dibutylone HCI. [*Id*.]. The post office box belonged to a co-defendant, Thames, in this case. [*Id*.]. The next day, a male contacted the Vero Beach Post Office looking for the packages and provided a phone number registered to Movant. [*Id*. at 2]. A special agent returned the phone call and confirmed delivery. [*Id*.]. Thames presented to the post office to retrieve the package, was apprehended, and agreed to cooperate. [*Id*.]. The packages contained the controlled substance. [*Id*.].

Thames, now working as an informant, made a phone call to Movant that she "got the stuff" and arranged a meeting to deliver it to him. [*Id*.]. At the meeting, Thames handed the packages to Movant. [*Id*.]. When law enforcement units moved in, Movant fled and was, eventually, apprehended. [*Id*.]. Officers seized drug proceeds from Movant, jewelry, and cell phones. [*Id*.]. Under the front seat of Movant's car, officers located a handgun. A passenger in Movant's car was in possession of Dibutylone. [*Id*. at 2-3].

Pursuant to a search warrant, officers confiscated electronic devices and documents from Movant's homes including a piece of paper with the Vero Beach Post Office address, wire transfer records, business cards for Chinese chemical companies and more than $10,000 in cash. [*Id*. at 3]. Thames admitted her role in delivering these parcels to Movant. [*Id*.]. Between 2014 and 2016, more than $59,000 in wire transfers were sent to China from Movant's accounts with his wife.

[*Id*.]. The electronic devices contained numerous communications with Chinese chemical companies discussing prices and ordering drugs and Schedule 1 controlled substances including synthetic cathinones, Dibutylone, and Ethylone. [*Id*.]. During that period, at least twenty packages were shipped from China to Movant's post office boxes and addresses. [*Id*.]. Movant and his wife earned at least $50,000 from these transactions. [*Id*.].

In his plea agreement, Movant acknowledged his guilt. [CR ECF No. 131]. Movant confirmed that he fully discussed the plea agreement and his trial rights with counsel and was "fully satisfied" with counsel. [*Id*. at 7-8].

Movant was represented by counsel at his change of plea hearing. [CV ECF No. 13-6]. Under oath, during the Court's colloquy pursuant to Fed. R. Crim. P. 11, Movant confirmed he had fully consulted with counsel and was fully satisfied with counsel's representation. [*Id*. at 7]. Movant confirmed he had the opportunity to read the plea agreement and discussed it with counsel prior to signing it. [*Id*. at 8]. The Court reviewed portions of the plea agreement and Movant confirmed he wanted to plead guilty to the charges. [*Id*. at 9]. Movant confirmed his understanding of the plea agreement and acknowledged that it contained all the terms of the agreement. [*Id*. at 11]. Movant confirmed that no one made any other promises or assurances and that he was pleading guilty of his own free will. [*Id*. at 11-12].

Movant acknowledged that he signed the factual proffer, had the opportunity to read it before he signed it, discussed it with his attorney, and that it was accurate. [*Id*. at 13-14]. Movant stipulated that the government could have proven each of the essential elements in the case had it gone to trial. [*Id*. at 14-15]. Movant confirmed his understanding that he was waiving certain constitutional rights by entering a guilty plea including his trial rights. [*Id*. at 18]. Movant then changed his plea to guilty. [*Id*. at 19].

### B. *Sentencing and Direct Appeal*

Movant was sentenced to 235 months for each count, both terms to be served consecutively, followed by three years supervised release, and a $200 assessment, a sentence ten years below the lower end of the applicable Sentencing Guidelines range. [CV ECF No. 258]. Nevertheless, he appealed his judgment of conviction claiming sentencing error. *United States v. Reason*, 724 F. App'x 827 (11th Cir. 2018). Movant claimed the district court erred when it:

(1) misappl[ied] U.S.S.G. § 2D1.1 finding that, for purposes of calculating his offense level, MDMA and MDEA were the substances "most closely related" to Dibutylone and Ethylone, respectively

(2) appl[ied] a four-point enhancement, pursuant to U.S.S.G. § 3B1.1(a), based on its finding that [Movant] was an organizer or leader of a criminal activity that involved five or more participants or that was otherwise extensive;

(3) appl[ied] a two-point enhancement, pursuant to U.S.S.G. § 2D1.1(b)(1), based on its finding that [Movant] possessed a firearm; and

(4) impos[ed] an otherwise procedurally and substantively unreasonable sentence.

*Id*. at 828-829.

On **February 20, 2018**, the Eleventh Circuit determined "the District Court did not err in calculating or imposing [Movant's] 235-month sentence" and affirmed his conviction and sentence. *Id*. at 832. Movant did not appeal. Accordingly, his conviction became final 90 days later, on **July 19, 2018**, when the time to seek certiorari with the Supreme Court of the United States expired. *See* Sup. Ct. R. 13. Movant had one year to timely file his motion to vacate, until **July 19, 2019**. Movant timely initiated this proceeding on **May 1, 2019**. [CV ECF No. 1].

5

### IV.     Applicable Law

*A.  Standard of Review of Section 2255 Motions*

Section 2255 states in relevant part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution...may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255.

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *see also McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under § 2255.

*B. Guilty Plea Principles*

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *See United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (table); *see also United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, *see United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003), attack the voluntary and knowing character of the guilty plea, *see Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty. *See United States v. Fairchild*, 803 F.2d 1121, 1123 (11th Cir. 1986).

To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *Id.*; *see also United States v. Frye*, 402 F.3d 1123, 1127 (11th Cir. 2005) (*per curiam*). In other words, a voluntary and intelligent plea of guilty made by an accused person must therefore

7

stand unless induced by misrepresentations made to the accused person by the court, prosecutor, or his own counsel. *See Brady*, 397 U.S. at 748.

Courts apply a "strong presumption" that statements made by a defendant during a change of plea colloquy are true. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

## V. Discussion

### A. Claim 1

Movant claims that newly-discovered evidence from the Indian River Crime Lab Report identifies the substance as "cocaine schedule II 56.64. Not crack cocaine." [ECF No. 6 at 5]. He provides no context for this claim and does not present it as an effective assistance of counsel claim. The government correctly maintains that this claim is insufficiently pled, otherwise fails on the merits, and is not cognizable. [ECF No. 13 at 9-10].

First, Movant does not explain the relevance of this evidence. To the extent he is challenging the drug quantity attributed to him at sentencing, the claim is meritless. His guilty plea "admits all the elements of a formal criminal charge, waives all nonjurisdictional defects in the proceedings." *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) (quoting *Fairchild*, 803 F.2d at 1124). He admitted that the object of the crime was to manufacture and distribute Dibutylone HCI, a Schedule I controlled substance. The Court determined that Movant entered a knowing and voluntary guilty plea. He cannot now raise claims about the sufficiency of the evidence supporting his guilty plea.

Second, to the extent this would be construed as affecting the applicable guidelines, it is well settled that a district court lacks authority to review an alleged sentencing error in a § 2255

case unless the claimed error constitutes a fundamental defect that inherently results in a complete miscarriage of justice. *Spencer v. United States*, 773 F.3d 1132 (11th Cir. 2014). As the government has noted, whether the substance was crack cocaine or cocaine would have made no difference in Movant's advisory guideline calculation because his base offense level would have remained 34. [ECF No. 13 at 10].

Movant does not raise a constitutional claim. Accordingly, **Claim 1** is without merit and should be DENIED.

*B. Claims 2, 3, and 4*

**Claims 2, 3, and 4** are sufficiently related to address together. [CV ECF No. 6 at 6-9]. Movant claims that *Phifer* is a new rule of constitutional law that found the definition of positional isomer ambiguous. According to Movant, *Phifer* constitutes new evidence that he did not meet the knowledge requirement to plead guilty. Finally, Movant claims that because the definition is ambiguous under *Phifer*, he is actually innocent. The Government correctly asserts, *Phifer* is not retroactively applicable because the decision was issued by the Eleventh Circuit Court of Appeals not the Supreme Court of the United States.

Moreover, *Phifer* does not stand for the proposition that the general definition of positional isomers is ambiguous. In *Phifer*, the Eleventh Circuit held that regulations promulgated by the Drug Enforcement Agency (DEA) did not clearly indicate that *ethylone* constituted a positional isomer of butylone -- that was for a jury to decide. *See Phifer*, 909 F.3d at 386. Accordingly, the Eleventh Circuit reversed where the district court solely relied on the definition of "positional isomer" in 21 C.F.R. Section 1300.01(b). In short, *Phifer* resolves a procedural question. There is no rule of constitutional law finding the definition of "positional isomers," or dibutylone for that

9

matter, vague or invalidating the DEA's regulation. Any claim asserting that the definition of "positional isomers" is ambiguous, necessarily fails.

Similarly, as presented in Claim 1, Movant waived all non-jurisdictional defects with his guilty plea. Moreover, Movant could have but did not raise on appeal that the definition of "positional isomers" was ambiguous. Movant cannot overcome the procedural default because he cannot demonstrate cause and prejudice. *See Frady*, 456 U.S. 167-68.

Finally, it is clear that the argument was available to him based on the arguments made in the motion to dismiss filed prior to his entering a guilty plea. In the motion to dismiss, counsel argued that "dibutylone does not fit the regulatory definition of a "positional isomer" of pentylone; therefore, dibutylone was not a controlled substance. [CV ECF No. 13-2]. The magistrate judge correctly determined at the change of plea hearing that it was "an element of proof not subject to pretrial determination." [CV ECF No. 13-5]. In short, it was an argument for trial. [*Id*.]. Here, Movant knowingly waived his trial rights and admitted guilt. His guilty plea, made under oath, satisfies the knowledge requirement and must stand. Accordingly, **Claims 2, 3 and 4** fail and should be DENIED.

## VI.    Evidentiary Hearing

Movant is also not entitled to an evidentiary hearing on the claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. *See Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (holding that if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## VII.     Certificate of Appealability

"A certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows…that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, in view of the entire record, the Court should deny a certificate of appealability. If Movant disagrees, he may so argue in any objections filed with the District Judge. *See* R. 11(a), Rules Governing § 2255 Proceedings ("Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.").

## VIII.    Recommendations

Based on the above, it is recommended that the Amended Motion to Vacate [ECF No. 6] be DENIED, that NO certificate of appealability issue, and, that this case be CLOSED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to do so will bar a *de novo* determination by the District Judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *see also Thomas v. Arn,* 474 U.S. 140, 149 (1985).

SIGNED this 29th day of October, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Julius Andrew Reason, III
     12550-104
     Edgefield
     Federal Correctional Institution
     Inmate Mail/Parcels
     Post Office Box 725
     Edgefield, SC 29824
     PRO SE

     Noticing 2255 U.S. Attorney
     Email: usafls-2255@usdoj.gov
     Carmen M. Lineberger
     U.S. Attorney's Office
     101 South U.S. Hwy 1, Suite 3100
     Fort Pierce, FL 34950
     Tel: 772-293-0944
     Email: CARMEN.LINEBERGER@USDOJ.GOV